**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

**Wesley Kevin Givs**                                              **Civil Action No. 05-788**

**versus**                                                                    **Judge Tucker L. Melançon**

**City of Eunice, et al**                                              **Magistrate Judge Methvin**

**MEMORANDUM RULING**

Before the Court is defendants' Motion for Summary Judgment [Rec. Doc. 40] and

Supplemental Motion for Summary Judgment [Rec. Doc. 45] seeking to dismiss plaintiff's

civil rights claims, as well as any and all state law or tort claims alleged against

defendants.  By Order dated April 23, 2007 [Rec. Doc. 50], the Court granted plaintiff a

seven day extension of time to file a response/reply to defendants' Motion for Summary

Judgment and Supplemental Motion for Summary Judgment.  The Order stated that no

further extension would be granted and the matter was set for consideration by the Court

without oral argument on April 30, 2007. [Rec. Doc. 52].  As of this date, plaintiff has not

filed an opposition or response to defendants' Motions.

**I. UNDISPUTED FACTS**

From the evidence of record, the pertinent facts are as follows.  Wesley Kevin Givs

was hired in 1999 by the City of Eunice as a plant operator for the city's Waste Water

Plant.  He was appointed as the first African American superintendent at the Waste Water

Plant for the City of Eunice in November of 2002, and was reaffirmed as superintendent

1

upon election of a new mayor, Mayor Lynn Lejeune, in January of 2003.

Consolidated Compliance Orders and Notices of Potential Penalty ("NOPP") were issued by the Louisiana Department of Environmental Quality for periods between November of 2002 and March of 2003, which was during the time frame plaintiff was superintendent.  (See Consolidated Compliance Order & Notice of Potential Penalty issued by DEQ, attached as Exhibit B to defendants' Motion). Some of the compliance issues arose due to equipment that was inoperable and many compliance issues dealt with the failure to timely file reports with the DEQ.  Filing reports with the DEQ fell under the job description and within the expertise and purview of plaintiff as plant superintendent.

Mayor  Lejeune was aware of the pending NOPP complaints from the Louisiana Department of Environmental Quality ("DEQ") as well as complaints of individuals residing near the Waste Water Plant regarding the facility's appearance and lack of compliance with regulations.  The Mayor visited with each department to get an understanding of how each department was run and the needs for budgeting and other possible restructuring in each department. (See Affidavit of Lynn Lejeune, attached as Exhibit A to defendants' Motion).  Mayor Lejeune advised Givs at that time and on several occasions thereafter to inform the Mayor regarding any and all things which could be done to clean and improve the facilities of the Waste Water Plant and to bring the Waste Water Plant into compliance with regulations. Plaintiff resisted all requests for assistance from the Mayor to handle the complaints made about the facility's appearance

2

and lack of compliance with regulations, and he informed the Mayor that he did not need assistance in managing the Waste Water Plant facilities.  (See Affidavit of Lynn Lejeune, Exhibit A to defendants' Motion).

In March of 2003, Mayor Lejeune received notices from the DEQ indicating that the City of Eunice was not in compliance due to inoperable equipment and plaintiff's continued failure to timely file reports.  The Mayor only received these notices from the DEQ because she had the mailing address changed to a post office box in which all mail was delivered to the Mayor's office.  Plaintiff did not advise the Mayor at any time prior to her receipt of the letters through a change of address of any warnings from the DEQ for noncompliance.  Again, Mayor Lejeune met with plaintiff to discuss the problems with the Waste Water Plant complying with regulations.  Plaintiff assured the Mayor that he was certified, had the management of the plant under control, and did not need her assistance. (See Affidavit of Lynn Lejeune, Exhibit A to defendants' Motion).

Because Mayor Lejeune had not been kept updated by plaintiff regarding the activities occurring at the Waste Water Plant, the Mayor requested the City Engineer, Karl Aucoin, to perform a complete evaluation to determine the needs of the facilities, to clean them, and to bring them into compliance with regulations by April of 2004.  (See Affidavit of Lynn Lejeune, Exhibit A to defendants' Motion).  As reflected by a letter from the City Engineer to Mayor Lejeune dated May 19, 2004, plaintiff refused to provide any information requested by or to comply with any items listed by the City Engineer.  (See

3

correspondence dated May 19, 2004 from Aucoin & Associates, Inc. to Mayor Lejeune, attached as Exhibit C to defendants' Motion).  Plaintiff was uncooperative with any advice and recommendations given by the City Engineer relating to improvement of the operation and process control of the facilities.  Plaintiff also refused to cooperate with the efforts made by the Louisiana Rural Water Association, Calpine, and the City Engineer to get the City of Eunice into compliance with the DEQ regulations and to maintain compliance. (See Affidavit of Lynn Lejeune, Exhibit A to defendants' Motion).

During the period between April of 2003 and August of 2003, the Waste Water Plant continued to suffer greatly from a lack of maintenance and failure to comply with the City Engineer's directives.  After multiple requests and warnings from Mayor Lejeune and the City Engineer, plaintiff allowed additional problems with the sludge stop-up to occur in July of 2003.  Plaintiff continued to violate DEQ regulations by failing to comply with reporting requirements.  By July of 2003, plaintiff had not complied with any of the items on the list given to him by the City Engineer in March of 2003 of things that needed to be done immediately to bring the Waste Water Plant into compliance with DEQ regulations by April of 2003.  (See Affidavit of Lynn Lejeune, Exhibit A to defendants' Motion).

Additionally, during this same time period, the city's administration attempted to schedule an I.S.O. quality control and purchase order system for all departments of the City of Eunice.  Robert S. Phillips is the I.S.O. consultant that assisted the City of Eunice on the  project.  Phillips' report to Mayor Lejeune indicates that in April of 2003, plaintiff

4

refused to cooperate and was negative on all aspects during meetings of the city department leaders regarding the I.S.O. program.  (See correspondence dated May 10, 2004 from Robert S. Phillips to Mayor Lejeune, attached as Exhibit D to defendants' Motion).

As a result of the I.S.O. system, Mayor Lejeune instituted a purchase order system wherein each department leader had a limit on purchasing items which cost $500.00 or more without prior approval of the Mayor.  This policy was expressly provided in the City of Eunice's Quality Systems Work Instruction, Purchase Order Work Instruction made effective on April 16, 2003.  Rule 4.1 of this document provides that "the purchasing agents will complete the purchase order form in its entirety."  Rule 4.2 provides that "a completed purchase order will include:  Supplier name and date, Quantity and complete description of item purchased, Department, Amount of purchase, Name of person receiving the purchased item, Department manager signature."  Rule 4.3 provides that "purchases $500 or less can be approved by the department manager."  Rule 4.4 provides that "purchases exceeding $500 must be approved by the Mayor prior to ordering material."  (See City of Eunice's Quality Systems Work Instruction, Purchase Order Work Instruction, attached as Exhibit E to defendants' Motion).

Plaintiff consistently refused to follow these orders.  From the date that these purchasing policies went into effect on April 16, 2003, plaintiff did not follow Rule 4.1 and complete a purchase order form for each purchase he made on behalf of the city as a

purchasing agent.  Plaintiff purchased multiple items on behalf of the city between April 16, 2003 and August 4, 2003 which cost $500 or more, and he never sought approval from Mayor Lejeune.  A letter of July 21, 2003 addressed to plaintiff from Mayor Lejeune reminded plaintiff of the policy and that plaintiff must adhere to same.  (See Affidavit of Lynn Lejeune, Exhibit A to defendants' Motion)  (See July 21, 2003 letter to plaintiff from Mayor Lejeune, attached as Exhibit F to defendant's Motion).  However, plaintiff made several purchases of items which cost $500 or more after receiving the July 21, 2003 letter without receiving prior approval.  (See multiple invoices for purchases made by Wesley Givs, attached as Exhibit G to defendants' Motion).

Plaintiff also consistently billed overtime hours, despite a rule that required that any overtime hours billed by city employees be approved beforehand by Mayor Lejeune.  The July 21, 2003 letter to plaintiff from Mayor Lejeune also reminded plaintiff of this policy, and that plaintiff must adhere to same.  However, plaintiff continued to violate city regulations and bill overtime hours after receiving this correspondence.  Moreover, defendants also allege that plaintiff often billed the city for hours worked when he was not present at the Waste Water Plant.   (See Affidavit of Lynn Lejeune, Exhibit A to defendants' Motion).

On the Thursday prior to his termination, the plaintiff met with Mayor Lejeune in a planning session for budgetary reasons, and plaintiff was told to provide the maintenance records on the equipment and vehicles of the Waste Water Plant to Mayor Lejeune.  Mayor

Lejeune clarified that she needed these records to assist in creating a maintenance program the following week.  Plaintiff refused to give the Mayor these records and specifically told the Mayor that she "did not need them."   (See Affidavit of Lynn Lejeune, Exhibit A to defendants' Motion).

The City of Eunice employed Leward Lafleur on July 7, 2003 as facilities maintenance operator of the Waste Water Plant to work alongside plaintiff.  The Mayor intended Lafleur's job duties to be limited to assisting plaintiff, the superintendent of the Waste Water Plant, responsible for operations of the plant, with general maintenance of the plant. As he did with all other city employees, plaintiff refused to work with Lafleur. (See Affidavit of Lynn Lejeune, Exhibit A to defendants' Motion).

Mayor Lejeune terminated plaintiff's employment on August 4, 2003, due to his constant insubordination. The City of Eunice Disciplinary Action Sheet, or plaintiff's "pink slip," signed by Mayor Lejeune on August 4, 2003, provides that "after many oral and written requests for Wes Givs not to exceed his purchasing limitations of $500 per invoice without approval from management, he continued doing this...also, to cut overtime, which he continued...and his constant wall of resistance....on Friday, August 1, 2003, I requested the maintenance reports on all equipment, vehicles, etc., and Wes refused to give me the reports."  (See City of Eunice Disciplinary Action Sheet, attached as Exhibit H; See Affidavit of Lynn Lejeune, Exhibit A to defendants' Motion).

Plaintiff filed a complaint with the Equal Employment Opportunity Commission

("EEOC") on April 20, 2004.  In the Charge of his EEOC complaint, plaintiff alleged that:

I.      My employment began approximately December 11, 1997.  I was denied the

position of Plant Manager and subsequently discharged on August 4, 2003

by the Respondent [City of Eunice] earning $8.53 per hour.

II.     According to Mayor E. Lynn Lejeune, I created a wall of resistence by not

complying with management's requests and restrictions.

III.     I believe I was discriminated against because of my race, Black.

 (See EEOC Charge of Discrimination, dated April 20, 2004, attached as Exhibit "A" to

defendant's Supplemental Motion).  The City of Eunice was issued a Notice of Charge of

Discrimination from the EEOC on May 4, 2004 with the Charge of Discrimination

attached.  (See EEOC Notice of Charge of Discrimination, dated May 4, 2004, attached as

Exhibit "B" to defendants' Supplemental Motion).  The Notice of Charge of

Discrimination requested that the City of Eunice provide a statement of its position on the

issues covered in the Charge of Discrimination with copies of any supporting

documentation to the EEOC by June 4, 2004.

The City of Eunice submitted a position paper with regard to the Charge of

Discrimination filed by Wesley Givs and attached supporting documentation in response to

plaintiff's Charge of Discrimination.[1]  (See position paper with regard to the Charge of

---

[1]

Defendants note that because there was no mention made by plaintiff of any issue of harassment,
violations of 42 U.S.C. 1981 and 42 U.S.C. 1983, retaliatory discharge under Title VII, violations
of the First and Fourteenth Amendments, whistleblowing, defamatory statements made by

Discrimination filed by Wesley Givs, attached as defendants' Exhibit "C" to Supplemental Motion).  The EEOC reviewed the materials submitted by Wesley Givs and the City of Eunice and investigated the claims made.  On February 8, 2005, the EEOC issued a Dismissal and Notice of Rights.  (See EEOC Dismissal and Notice of Rights, dated February 8, 2005, attached as Exhibit "D" to defendants' Supplemental Motion).  This document included a Notice of Suit Rights, which stated that the EEOC was unable to determine that the City of Eunice had violated the law, but Wesley Givs was issued a right to sue.  Thus Givs filed the instant suit on May 6, 2005.

In the Complaint and Amended Supplemental Complaint, plaintiff claims that he was discharged due to race discrimination, and also claims harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*; unlawful discharge in violation of 42 U.S.C. 1981 and 42 U.S.C. 1983; violations of the First and Fourteenth Amendments, defamation, and intentional and/or negligent emotional distress. [Rec. Docs. 1 & 32].

On March 13, 2007, the City of Eunice filed a Motion for Summary Judgment on all of Givs' claims [Rec. Doc. 40] claiming that there is no genuine issue of material fact

---

representatives of the City of Eunice, and/or intentional and/or negligent emotional distress inflicted upon him by the City of Eunice in his Charge of Discrimination, there was no discussion of these issues in the City of Eunice's position paper.  More specifically, nothing was argued in the City of Eunice's position paper regarding the fact that plaintiff was allegedly discharged from employment with the City of Eunice, because he supposedly complained to Mayor Lejeune, other city officials, and state organizations about the lack of qualification and certification of Leward Lefleur and about general policies and procedures of the city administration, because these issues were not raised by plaintiff in his Charge of Discrimination.

that plaintiff did not suffer any constitutional deprivation and a discriminatory discharge and/or a retaliatory discharge under Title VII did not occur because plaintiff's termination was based completely on legitimate, nonretaliatory, nondiscriminatory reasons. Furthermore, defendants claim that they did not violate any Louisiana law, including but not limited to the Louisiana whistleblowers statute, state law regarding defamatory statements, state law regarding intentional and/or negligent infliction of emotional distress, and that plaintiff was an at will employee.

Based on a ruling issued March 21, 2007 by the United States Court of Appeals for the Fifth Circuit, *Joseph James Thomas, Jr. v. Atmos Energy Corp*., 2007 WL 866709 (5th Cir. 2007), that  specifically restricted the right of a plaintiff in a lawsuit involving employment discrimination claims to bring allegations in a federal complaint that were not brought in an administrative complaint filed with the EEOC, defendants filed a Supplemental Motion for Summary Judgment [Rec. Doc. 45] on April 3, 2007.  In the Supplemental Motion, defendants allege that all of plaintiff's claims that were not raised in the charge of discrimination filed with the EEOC on April 20, 2004 should be dismissed.  More specifically, defendants argue that because plaintiff narrowly limited his allegations in his Charge of Discrimination filed with the EEOC, the multiple allegations pursuant to 42 U.S.C. 1981 and 42 U.S.C. 1983, retaliatory discharge, First and Fourteenth Amendment violations, and whistle-blowing fall outside the narrowly described allegations of race discrimination and therefore should be dismissed.

In spite of being granted an extension of time to respond, plaintiff, who proceeds *pro se*, has not filed an opposition or any response whatsoever to either of defendants' pending motions made pursuant to Federal Rule of Civil Procedure 56.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23.

---

[2]

Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322.  Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party.  *Id.*

### III. LAW & ANALYSIS

As an initial matter, the fact that Givs has not filed an opposition to defendants'

Motions for Summary Judgment does not necessarily signify that defendants should prevail on the merits. "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).  However, plaintiff's failure to file an opposition to defendants' Motions for Summary Judgment and corresponding statements of contested material facts requires the Court to deem defendants' statements of uncontested material facts admitted for purposes of the instant motion.  *See* Local Rule 56.2W.

The Court will first address defendants' arguments presented in the Supplemental Motion that would dismiss all of plaintiff's claims except for that of racial discrimination, as the only claim properly raised in the EEOC complaint, for failure to properly proceed on those claims with the EEOC.

Administrative review by the EEOC is normally required before the Court may review a complaint brought under Title VII. 42 U.S.C. § 2000e-5(e)(1) ("Title VII"); *Messer v. Meno,* 130 F.3d 130, 134 (5th Cir.1997). In a "deferral" state like Louisiana, an aggrieved employee has 300 days from the date of the last alleged act of discrimination to file an EEOC charge in order to preserve his right to make federal claims in a district court

suit on a later date.[3]  42 U.S.C. § 2000e-5(e)(1); *Huckabay v. Moore,* 142 F.3d 233, 238

(5th Cir.1998); *Messer,* 130 F.3d at 134 & n. 2; *Griffin v. City of Dallas,* 26 F.3d 610, 612

(5th Cir.1994).  An individual who files an EEOC complaint and receives a Dismissal and

Notice of Rights (or a right to sue notice) from the EEOC has ninety (90) days from the

date of notice to file a claim with the appropriate district court.  42 U.S.C. 2000e-5(f)(1).

A Title VII complaint is limited to the scope of the EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination.  *Thomas  v. Texas*

*Dept. Of Criminal Justice, Institutional Division*, 220 F.3d 389 (5th Cir. 2000).

Essentially, any issues that plaintiff did not bring before the EEOC for consideration and

were not investigated by the EEOC during its investigation cannot be considered by a

district court.  *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995).  On that point, defendants

direct the Court to a recent opinion issued by the United States Court of Appeals for the

Fifth Circuit in *Joseph James Thomas, Jr. v. Atmos Energy Corp*., 2007 WL 866709 (5th

Cir. 2007) to argue that plaintiff has brought multiple claims that fall outside the

allegations listed in his EEOC charge of race discrimination and under *Thomas, Jr.*, and

---

[3]

A deferral state is one in which state law prohibits discrimination in employment and a state
agency has been established to grant or seek relief for such discriminatory practice. *Clark v.
Resistoflex Co.,* 854 F.2d 762, 765 n. 1 (5th Cir.1988). The Louisiana Commission on Human
Rights ("LCHR") has been funded and operating since April 1994, making Louisiana a deferral
state since that time. La.Rev.Stat. Ann. § 51:2233 (West Supp.1997); G. Guidry, *Employment
Discrimination Claims in Louisiana,* 45 La. B.J. 240, 241 (Oct.1997); G. Huffman, *The
Louisiana Commission on Human Rights-Now It's for Real,* Briefly Speaking, Spring 1995, at 4
(New Orleans Bar Ass'n).

those matters which are not "like or related to" these accusations such that an EEOC investigation into the charge of race discrimination would not reasonably be expected to encompass should be dismissed

In *Thomas, Jr.*, the plaintiff filed a complaint with the EEOC claiming racial and sexual harassment as well as retaliation for a previous EEOC complaint.  On July 9, 2004, the EEOC issued to Thomas a right-to-sue letter that stated it was unable to determine that Atmos had violated the law. Thomas filed suit in the United State District Court for the Western District of Louisiana, Monroe Division, bringing claims of racial discrimination and harassment, sexual harassment, and retaliation in violation of Title VII. The district court granted summary judgment to Atmos on all claims, and plaintiff appealed the judgment with respect to his retaliation claim.  In affirming the district court's granting of summary judgment in favor of the defendant, the Fifth Circuit stated:

> The filing of an administrative complaint is a prerequisite to a Title VII suit.  *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir.1995). Accordingly, we may consider as the basis for Thomas's suit only the specific allegations made in his 2004 EEOC complaint, as well as "any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 578 (5th Cir.1993).

*Thomas ,* 2007 WL 866709, at  *6.  For this reason, the Fifth Circuit considered the plaintiff's EEOC charges of sexually explicit conduct but refused to consider plaintiff's other allegation of degrading work-practices because they were not "like or related to" his accusation regarding the sexual harassment conduct, and an "EEOC investigation into

Straugheter's [sexually explicit] conduct could not reasonably be expected to encompass Boone's work assignment practices. We therefore may not consider these practices as a basis for Thomas' retaliation claim." *Id.*

Likewise, in the case at bar, Givs only asserted in his EEOC complaint that 1) he was discharged from employment with the City of Eunice, 2) Mayor Lejeune said that he was not complying with the requests and restrictions of the city's administration, and 3) that he was discriminated against due to his race.  Even though plaintiff checked both the race and retaliation boxes on the EEOC complaint, the Court does not accept that merely checking the retaliation box is sufficient to exhaust his administrative remedies. Plaintiff's failure to allege *any facts* concerning retaliation or harassment that would have put the EEOC on notice about the possibility of such, are fatal to these claims. *See Randel v. U.S. Dep't. of Navy,* 157 F.3d 392, 395 (5th Cir.1998).  Plaintiff's claims of harassment and retaliation pursuant Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*, are not sufficiently related to his discrimination charge nor can they be supported by the facts alleged in the EEOC charge and are therefore barred from being brought before the Court by this failure to follow the appropriate administrative procedure.   In sum, plaintiff's only Title VII claims preserved through his EEOC charge are his racial discrimination claims, and the claims of harassment and retaliation must be dismissed.

However, defendants are mistaken in arguing that plaintiff's claims based on violations of 42 U.S.C. 1981 and 42 U.S.C. 1983  warrant dismissal on this ground. "The

use of section 1981 as an avenue for redress of employment discrimination is not constrained by the administrative prerequisites [applicable to] Title VII claims...." *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir.2000); *Scarlett v. Seaboard Coast Line R. Co.,* 676 F.2d 1043, 1050 (5th Cir. 1982).  Neither do plaintiff's federal claims of violations of the First and Fourteenth Amendment, and state law claims of whistle-blowing, defamatory statements, and/or intentional and/or negligent emotional distress require EEOC investigation or administrative exhaustion as a prerequisite to filing suit.

Notwithstanding the above, assuming *arguendo* that plaintiff did exhaust his administrative remedies and the entirety of plaintiff's Title VII claims were properly before the Court, the undersigned would still find that defendants are entitled to summary judgment on all claims for the reasons set out hereinafter.

### A.    *Title VII Race Discrimination Claim*

Under Title VII, to survive summary judgment, the plaintiff has the burden to come forward with evidence that raises a genuine issue of material fact concerning each element of his prima facie case of unlawful discrimination.  Using the well-established burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), plaintiff establishes a prima facie case of racial discrimination by proving (1) that he is a member of a protected class, (2) that he was qualified for the position, (3) that he suffered adverse employment action, and (4) that, in the case of disparate treatment, others similarly situated were treated more favorably. *Bouie v. Equistar Chemicals LP,* 2006 WL 1736557

17

(5th Cir. 2006);  *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th
Cir.1999)).  The burden then shifts to the defendant to produce a legitimate,
nondiscriminatory rationale for its decision. *McDonnell Douglas Corp.,* 411 U.S. at 802.
If the defendant comes forward with a reason which, if believed, would support a finding
that the challenged action was nondiscriminatory, the inference raised by the plaintiff's
prima facie case drops from the case.  *Id.*; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,
507 (1993).  The focus then shifts to the ultimate question of whether the defendant
intentionally discriminated against the plaintiff, and the burden shifts back to the plaintiff
to "raise a genuine issue of material fact as to whether the [employer's] proffered reason
was merely a pretext for discrimination." *McDonnell Douglas Corp.,* 411 U.S. at 802;
*Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001). "[A] plaintiff's prima
facie case, combined with sufficient evidence to find that the employer's asserted
justification is false, may permit the trier of fact to conclude that the employer unlawfully
discriminated." *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 148 (2000).

Defendants moves for summary judgment on plaintiff's claims of race
discrimination on the grounds that plaintiff has not and cannot meet his burden of
establishing a prima facie case of discriminatory discharge under Title VII.  The Court
takes judicial notice that, as an African American male, plaintiff is indisputably a member
of a protected class and therefore meets the first prong.  The Court also finds that plaintiff
easily meets the third prong as he clearly suffered an adverse action in being terminated

from employment.

As for the second prong, plaintiff received a Class I certification in treatment and a Class II certification in collection, but the Waste Water Plant is a Class III facility, and plaintiff did not have Class III certifications.  (See personnel file of plaintiff, attached as Exhibit I to defendants' Motion).  Defendants also argue that plaintiff's performance proved that he was not truly qualified for the job as superintendent and provide evidence of ongoing poor operational procedures and overall inadequacies in the facilities.  Plaintiff has not provided any evidence to the contrary. The record reflects that in 1999 he was employed by the City of Eunice as a plant operator, appointed superintendent at the Waste Water Plant in November of 2002, and reaffirmed as superintendent in January of 2003 so his lack of a Class III certification does not appear to have been an issue.  For these reasons, in considering the facts in the light most favorable to the plaintiff as the non-moving party, the Court will assume that plaintiff was qualified for the position and thus could meet the second prong of the discriminatory discharge test under Title VII.

Plaintiff's prima facie case fails, however, on the final prong.  There simply is no evidence that plaintiff suffered any discriminatory or differential treatment during his employment or with respect to his termination, or that others similarly situated were treated more favorably under circumstances "nearly identical" to his.  *Bouie v. Equistar Chemicals LP,* 2006 WL 1736557 (5th Cir. 2006).  The City of Eunice maintains that it terminates employees only for legitimate reasons and it does so completely independent of

19

any consideration of any race, color, religion, sex, or national origin of the employee. There is no evidence indicating that the City of Eunice ever failed to terminate any white male or female superintendent for making any oral and/or written complaints regarding their immediate supervisors and/or the general policies and procedures of the Waste Water Plant.  Moreover, there is no evidence that the City of Eunice varied from its usual non-discriminatory policy and procedures in deciding to terminate plaintiff. Therefore, plaintiff cannot establish the fourth prong and his prima facie case fails as a matter of law.

Assuming *arguendo* that plaintiff could establish a prima facie case, defendants assert that there were legitimate non-discriminatory reason for plaintiff's termination.  The reasons listed in the City of Eunice Disciplinary Action Sheet regarding plaintiff, or plaintiff's "pink slip," provide that even "after many oral and written requests," plaintiff continuously exceeded his purchasing limitation of $500 without approval from management, consistently billed overtime hours, and constantly created a wall of resistance to any requests to follow through with work needed to bring the Waste Water Plant into compliance with regulations (See City of Eunice Disciplinary Action Sheet regarding plaintiff, attached as Exhibit H to defendants' Motion).  Further, the "pink slip" indicated that on Friday, August 1, 2003, the Mayor requested plaintiff provide reports regarding all equipment, vehicles, etc. used by the Waste Water Plant, and plaintiff refused to provide this information to the Mayor.  The record does not suggest and plaintiff has not presented any evidence that would raise a genuine issue of material fact to whether

20

defendant met his burden under *McDonnell Douglas Corp.* (supra) in establishing a non-discriminatory reason for the termination.

Thus, in order to survive summary judgment, plaintiff must proffer sufficient evidence of pretext to create a question of fact for the jury that race was the real reason for his termination. *Patel v. Midland Memorial Hosp. and Medical Center*, 298 F.3d 333, 342 (5th Cir. 2002). Plaintiff has not met this burden and there is no evidence in the record suggesting such, therefore, based on the above, the Court must conclude that plaintiff was terminated for legitimate, non discriminatory reasons and plaintiff's claim of racial discrimination pursuant to Title VII must be dismissed.

**B.      *Title VII Retaliation Claims***

Title VII prohibits retaliation by employers against employees who have previously filed a charge of discrimination. 42 U.S.C. § 2000e-3(a). Analysis of plaintiff's Title VII retaliation claims mirror the above and the Court undergoes the familiar burden-shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) set out above. In short, a plaintiff must first make out a *prima facie* case of retaliation by showing (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there is a causal link between the protected activity and the adverse employment action. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir.2005) (citing *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167 (5th Cir.1999)); *Manning v. Chevron Chemical Company, L.L.C.*, 332 F.3d 874, 883 (5th Cir. 2003).

21

In the Complaint, plaintiff alleges that he engaged in the protected activity of complaining to Mayor Lejeune, other city officials, and state organizations about the lack of qualification and certification of his immediate supervisor and about general policies and procedures of the city administration. Plaintiff testified during his deposition that he made multiple oral complaints at city council meetings about the lack of qualification and certification of Leward Lafleur, facilities maintenance operator.  He also testified that he passed out packets detailing the rules and regulations for operators during a city council meeting, and a packet was supposedly given to Mayor Lejeune. (See Deposition of Plaintiff, pages 107-109, attached as Exhibit M to defendants' Motion).  However, Mayor LeJeune indicated that she was unaware of any critical comments that plaintiff made and plaintiff has not provided any contrary evidence to this issue that would create an issue of fact. (See Affidavit of Lynn Lejeune, attached as Exhibit A to defendants' Motion) (See newspaper article entitled "City's sewage problems waning," attached as Exhibit N to defendants' Motion).  The Fifth Circuit has held that "where an employer is unaware of the protected conduct at the time of the discharge, the employer could not have retaliated against the employee based on the conduct." *Bouie*, 2006 WL 1736557 (citing  *Chaney v. New Orleans Pub. Facility Mgmt., Inc.,* 179 F.3d 164, 167 (5th Cir. 1999).  Still, even allowing plaintiff the benefit of the doubt, and finding that he did engage in protected activity to meet the first prong, this is not enough for plaintiff to survive summary judgment of his Title VII retaliation claim.

22

As for the second prong, "ultimate employment decisions," "such as hiring, granting leave, discharging, promoting, and compensating" satisfy the "adverse employment action" element of a prima facie case of retaliation.  *Pegram V. Honeywell, Inc.*, 2004 WL 315145, *5 (5th Cir. 2004). Thus, plaintiff may argue and the Court finds that he meets the second prong of the test for retaliatory discharge because he was terminated from employment.

Regarding the third prong, however, defendants argue that plaintiff was terminated for legitimate, nondiscriminatory reasons, which would prevent plaintiff from establishing the requisite causation.  In his Complaint, plaintiff alleges that he was discharged in retaliation for his critical statements and filing of employee grievances, however he has provided no evidence demonstrating a causal link between the protected activity and the adverse employment action.  Rather, as discussed in detail above, the record before the Court shows that plaintiff's "pink slip" indicates that he was terminated for legitimate reasons: he continuously exceeded his purchasing limitation of $500 without approval from management, consistently billed overtime hours, consistently failed to follow oral and written instructions given to him by the Mayor and/or other city personnel who supervised his work, and constantly created a wall of resistance to any requests to follow through with work needed to bring the Waste Water Plant into compliance with regulations.  (See Affidavit of Lynn Lejeune, Exhibit A to defendants' Motion) (See City of Eunice Disciplinary Action Sheet regarding plaintiff, attached as Exhibit H to

defendants' Motion).  Based on the record, the Court finds that plaintiff was terminated for legitimate, non-discriminatory reasons, and cannot draw a connection between the complaints plaintiff allegedly and his termination from employment as required by the third prong of the test.  Thus, plaintiff's prima facie case of retaliation fails as a matter of law.

Additionally, given defendants' articulation of legitimate, nondiscriminatory reasons for the actions taken in light of the circumstances surrounding the incidents, assuming plaintiff had established his prima facie case, the burden of production would shift back to plaintiff whereby he must offer evidence that defendants' reasons are really a pretext. To survive the pretext stage in a summary judgment proceeding,  plaintiffs must create a genuine issue of fact as to the defendants' asserted reasons. *Scott v. University of Mississippi*, 148 F.3d 493, 504 (5th Cir. 1998). In a case in which the employer has articulated a rational justification for terminating an employee, and the facts supporting that justification are not seriously disputed, the task of proving pretext becomes difficult. *Bouie v. Equistar Chemicals LP*, 2006 WL 1736557 (5th Cir. 2006); *Elliot v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983).

As it were, plaintiff cannot establish a *prima facie* case of retaliation  and the evidence does not suffice to present a jury question as to pretext.  The record does not provide any evidence of pretext or retaliation other than the plaintiff's own subjective belief and uncorroborated, conclusory allegations.  *National Ass'n of Government*

*Employees v. City Public Service Bd. of San Antonio, Tex*., 40 F.3d 698, 713 (5th Cir. 1994)(Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment).   Accordingly, plaintiffs' claim for retaliation will be dismissed.

     C.     *Title VII Harassment Claim*

     To establish a prima facie case for a Title VII violation based on racial harassment creating a hostile work environment, plaintiff must prove: (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Allen v. Potter,* 152 Fed.Appx. 379, 382 (5th Cir. 2005); *Kang v. Board of Supervisors of Louisiana State University*, 75 Fed.Appx. 974, 976 (5th Cir. 2003)*; Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir.2002).

     To survive summary judgment on a hostile work environment claim based on race, the nonmovant must create a fact issue as to each of the following elements: "(1) racially discriminatory intimidation, ridicule and insults that are; (2) sufficiently severe or pervasive that they; (3) alter the conditions of employment; and (4) create an abusive working environment." *DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 594 (5th Cir. 2005); *Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 434 (5th Cir.2005).  Whether a work environment meets these criteria depends upon the totality of

25

the circumstances.  *Harris v. Forklift Sysm Inc.,* 510 U.S. 17, 23 (1993); *Harvill,* 433 F.3d

at 434; *DeAngelis,* 51 F.3d at 594.  In determining whether a workplace constitutes a

hostile work environment, courts consider the following factors: "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

a mere offensive utterance; and whether it unreasonably interferes with an employee's

work performance." *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir.2000)*; Allen v.*

*Potter,* 152 Fed.Appx. 379, 382 (5th Cir. 2005).

　　　Neither the Complaint or Amended Supplemental Complaint contain allegations

sufficient to establish a prima facie case of racial harassment.  The record does not reflect

any incidents of racial enmity nor any work place conduct or statements with improper

racial character or purpose, nor has plaintiff proffered any evidence of such.  In sum, the

facts do not support an actionable claim of racial harassment under Title VII and the claim

must be dismissed.

　　　**D.**　　*Section 1983 Claims*

　　　Apparently based on the same allegations of racial discrimination and retaliation

discussed above, as well as denial of due process under the Fourteenth Amendment and

freedom of speech under the First Amendment,  plaintiff brought a general claim of

unlawful termination pursuant to 42 U.S.C. §1983 ("Section 1983" or "§1983"). Section

1983 does not create substantive rights, but rather is merely a procedural rule that provides

a private cause of action for redressing a violation of federal law or "vindicating federal

rights elsewhere conferred." *Albright v. Oliver,* 510 U.S. 266, 217 (1994)(quoting *Baker v. McCollan,* 443 U.S. 137 (1979); *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989).  "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983."  *Johnston,* 869 F.2d at 1573.

There are three elements to establish liability in a §1983 action.  *Victoria W. v. Larpenter,* 369 F.3d 475, 482 (5th Cir.2004) (citing *Bush v. Viterna,* 795 F.2d 1203, 1209 (5th Cir.1986)). To prevail, the plaintiff must show "(1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999);  *Blessing v. Freestone,* 520 U.S. 329, 340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1986).   A §1983 plaintiff must support her claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir.1995). What's more, the plaintiff must establish  a direct causal connection between the matter occurring under color of state law and the alleged constitutional violation. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 310 (5th Cir.2004); *Piotrowski v. City of Houston,* 237 F.3d 567, 580 (5th Cir. 2001).

"[T]he first step in a §1983 analysis is to identify the specific constitutional right involved." *Oliver v. Scott,* 276 F.3d 736, 744 n. 10 (5th Cir. 2002) (citing *Baker,* 443 U.S. at 140).  The Court will first consider plaintiff's allegations of racial discrimination and

retaliation, then consider the First and Fourteenth Amendment claims.  Employment

discrimination claims brought under §1983 are analyzed under the evidentiary framework

applicable to claims arising under Title VII.  *Tanik v. Southern Methodist Univ.,* 116 F.3d

775, 775 (5th Cir.1997); *Anderson v. Douglas & Lomason Co.,* 26 F.3d 1277, 1284 n. 7

(5th Cir.1994).  Thus, to prevail, plaintiff must prove that he was subject to intentional

discrimination and retaliatory discharge, which as set out above, he has not and cannot do.

*Washington v. Davis,* 426 U.S. 229,(1976); *Coleman v. Houston Indep. Sch. Dist.,* 113

F.3d 528, 533 (5th Cir.1997).  Considering the absence of any evidence from which a

reasonable trier of fact could infer intentional discrimination based on race or retaliatory

discharge, claims of such under §1983 must be dismissed.

### E.    *Section 1981 Claims*

Apparently in a "throw spaghetti at the wall and hope something sticks" approach,

when preparing his Amended Supplemental Complaint, plaintiff included race

discrimination claims under 42 U.S.C. §1981 ("Section 1981" or "§1981").  The standard

for determining whether §1981 has been violated is also like that used in determining

whether there has been a violation of Title VII. *Village of Arlington Heights v.*

*Metropolitan Housing Development Corp*., 429 U.S. 252 (1977).  The same four factors

required to establish a prima facie case for race discrimination under Title VII as set forth

above must be satisfied and the Court must go through the burden-shifting analysis set

forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Patterson v. McLean Credit*

*Union,* 491 U.S. 164, 186-88 (1989).

As the Court previously found, plaintiff has failed to make a prima facie case for racial discrimination nor has he demonstrated that defendants' articulated reasons for plaintiff's termination were merely a pretext for discriminatory intent or retaliation for exercising a protected right.  A careful review of the record reveals no evidence showing that plaintiff was terminated on account of his race or in retaliation. Therefore, the Court must dismiss plaintiff's §1981claims of unlawful discharge because it is based on unsupported allegations of discrimination and retaliation.

### F.    *First Amendment Claims*

Plaintiff also claims that his right to freedom of speech guaranteed by the First Amendment of the United States Constitution was violated in that he was unlawfully discharged on the basis of and in retaliation of statements made.[4]  In his Complaint, plaintiff asserts that "prior to his termination, plaintiff made statements that were critical of the policies, procedures, and administration of the City of Eunice Wastewater-Sewage Plant, including particular criticism of the lack of qualifications of his immediate

---

[4] This claim is assumedly brought under §1983, which means to prevail, the plaintiff must show, supported specific facts demonstrating: (1) a deprivation of a right secured by federal law (2) that occurred under color of state law, (3) was caused by a state actor, and (4) a direct causal connection between the matter occurring under color of state law and the alleged constitutional violation.  *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999);  *Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir.1995). *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 310 (5th Cir. 2004).

supervisor Leward Lafleur," and that he was discharged "in retaliation for his critical statements and filing of an employee grievance."  (See Complaint, ¶¶ 8, 19 (b)).

To establish a cognizable First Amendment claim for unlawful retaliation, plaintiff must prove: (1)  he suffered an adverse employment action; (2)  his conduct was protected by the First Amendment, that is, his speech involved a matter of public concern; (3) the interests of the employee in commenting upon matters of public concern outweigh the "interest of the State, as an employer, in promoting the efficiency of the public service[s] it performs through its employees; and (4) that his protected speech or conduct was a substantial or motivating factor in the employer's decision to terminate his employment. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987); *Connick v. Myers*, 461 U.S. 138, 146 (1983)*; Cabrol v. Town of Youngsville,* 106 F.3d 101, 108 (5th Cir.1997); *Click v. Copeland,* 970 F.2d 106, 113 (5th Cir.1992) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)).

If plaintiff produces evidence that his speech was protected and was a substantial motivating factor in his termination, then the burden shifts to the defendant to show the existence of a legitimate reason for the termination or proof that the same employment decision would have been made in absence of the protected speech.  *Chiasson,* 347 F.Supp.2d 300, 308-309 (E.D. La. 2004).

The threshold requirement for establishing a cognizable freedom of speech claim is a showing that the speech at issue was a matter of "public concern." *Connick,* 461 U.S.

138 (1983). Determination of whether a public employee's speech addresses a matter of "public concern" is a question of law to be decided by the court. *See id.* at 138, 148 n. 7; *Coughlin v. Lee,* 946 F.2d 1152, 1156 (5th Cir.1991). Whether speech is a matter of public concern is to be determined by the "content, form, and context of a given statement, as revealed by the whole record." *Coughlin,* 946 F.2d at 1156 (quoting *Connick v. Myers,* 461 U.S. 138, (1983)). Issues rise to the level of public concern if an individual speaks primarily in his role as a citizen rather than as an employee addressing matters of only personal interest, or if the information conveyed is of "relevance to the public's evaluation of the performance of governmental agencies." *Coughlin,* 946 F.2d at 1157 (citing *Day v. South Park Indep. Sch. Dist.,* 768 F.2d 696, 700 (5th Cir.1985). If a plaintiff's complaints about his supervisor are "personal grievances" that relate to the conditions of the plaintiff's employment and the quality of his work environment, or when the content of speech "deals with individual personnel disputes and grievances," the speech does not involve a matter of public concern.  *Chiasson,* 347 F.Supp.2d at 309.  The Fifth Circuit has determined that while almost anything that occurs within a public agency *could* be of concern to the public, it is not enough that an employee's speech regards a topic that the public simply *might* have a great interest . *Terrell v. Univ. of Texas Sys. Police*, 792 F.2d 1360 (5th Cir. 1986).

In reviewing the record before the Court, plaintiff has not demonstrated that his speech was entitled to constitutional protection.  It is obvious from the content, form, and

context of any speech or statement that plaintiff alleges he communicated, that when taken into consideration as a whole, none involved matters of public concern or interest.   In *Connick v. Myers*, 461 U.S. 138, 146-147 (1983), the United States Supreme Court stated:

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment .... [W]hen a public employee speaks not as a citizen upon matters of public interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Moreover, even if some of plaintiff's statement did involve a matter of public concern, there is no evidence that his discharge was the result of  retaliatory action taken as a consequence of his engaging in an activity protected under the First Amendment. Plaintiff was terminated because he was repeatedly disruptive and refused to follow instructions of his supervisors.  Terminating an employee for insubordination is a legitimate reason for termination.  *Connick v. Myers,* 461 U.S. 138 (1983).

For the reasons stated, this Court finds that Plaintiff has failed to carry his summary judgment burden with regard to his freedom of speech claim under the United States Constitution. Accordingly, defendants' Motion for Summary Judgment will be granted with regard to plaintiff's freedom of speech claim brought under the Fourteenth Amendment and §1983, and the claim must be dismissed.

### G.     *Fourteenth Amendment Claims*

Plaintiff also alleges that he was deprived of rights secured by the Fourteenth Amendment of the United States Constitution to be protected against a deprivation of his life, liberty, or property without "due process of law."[5]

In order to establish a claim of denial of procedural due process, a plaintiff must prove that he had a constitutionally protected property or liberty interest that has been infringed by the defendant. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538,(1985); *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972).  Procedural due process claims require a two-part analysis: (1) whether the plaintiff has a liberty or property interest that is entitled to procedural due process protection; and (2) if so, what process is due. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428 (1982); *Findeisen v. North East Indep. Sch. Dist.,* 749 F.2d 234, 237 (5th Cir.1984). A property interest for the purpose of due process claims is "an entitlement grounded in state law, which cannot be removed except 'for cause.' " *Logan,* 455 U.S. at 430.

To establish a due process violation in the public employment context, the plaintiff must first show that he had a legally cognizable property interest in his continued

---

[5] This claim is also assumedly brought under §1983, which means to prevail, the plaintiff must show, supported specific facts demonstrating: (1) a deprivation of a right secured by federal law (2) that occurred under color of state law, (3) was caused by a state actor, and (4) a direct causal connection between the matter occurring under color of state law and the alleged constitutional violation.  *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999);  *Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir. 1995). *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 310 (5th Cir. 2004).

employment.[6] *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985); *Bishop v. Wood,* 426 U.S. 341, 344 (1976); *Conner v. Lavaca Hosp. Dist.,* 267 F.3d 426, 429 (5th Cir. 2001); *Lollar v. Baker,* 196 F.3d 603, 607 (5th Cir. 1999); *Brown v. Texas A & M Univ.,* 804 F.2d 327, 335 (5th Cir. 1986). "Public employees must demonstrate a property right founded on a 'legitimate claim of entitlement' based on 'mutually explicit understandings." *Perry v. Sindermann,* 408 U.S. 593, 601 (1972).  A mere unilateral expectation of continued employment on the part of the employee is insufficient to confer a property interest.  *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972). As the U.S. Supreme Court has explained, a public employee has a property interest in his job within the meaning of the due process clauses of both the Fifth and Fourteenth Amendments if he can be fired only for misconduct or "just cause." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985).

Here, defendants argue and the record shows that plaintiff was an "at will" employee.  When employment is for an indefinite term, it is terminable at the will of either the employer or the employee.[7] *Williams v. Delta Haven, Inc.,* 416 So.2d 637 (La.App. 2

---

[6]

Plaintiff has not even alleged that his liberty interests have been violated. In order to show the deprivation of a protected liberty interest, plaintiff must show that he has been stigmatized in connection with some other violation of a property or statutory violation such that he is hindered in the pursuit of his chosen profession. *Roth,* 408 U.S. at 573-75,. Not having alleged any such stigmatization or impediment to his professional pursuits, plaintiff has not claimed that his liberty interests have been violated by the defendants.

[7]

Louisiana Civil Code Article 2747provides: "A man is at liberty to dismiss a hired servant

34

Cir. 1982); *Pechon v. National Corporation Service*, 100 So.2d 213 (La. 1958). "Absent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason without incurring liability for the discharge." *Williams,* 416 So.2d at 638.  In the case at bar, plaintiff's Complaint vaguely asserts that defendants' actions deprived him of an interest protected by the due process clause of the Fourteenth Amendment.  Plaintiff has not alleged nor does the record show that a policy, regulation, rule or understandings existed between plaintiff and the defendants, his employer, sufficient to cause him to reasonably expect such employment. Therefore, the Court finds that plaintiff has failed to show that he had a protected property interest in his continued employment with the City of Eunice or that he was denied the process due under the state law governing his employment.

Additionally, under substantive due process, in order to show that he was unconstitutionally deprived of his interest in his employment, plaintiff would have to show that the termination of that protected interest was arbitrary or capricious. *Moulton v. City of*

---

attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause." The Louisiana Supreme Court in *Pitcher v. United Oil & Gas Syndicate,* 139 So. 760, 761, 174 La. 66 (1932), enunciating the principle underlying this doctrine, stated:

> An employee is never presumed to engage his services permanently, thereby cutting himself off from all chances of improving his condition; indeed, in this land of opportunity it would be against public policy and the spirit of our institutions that any man should thus handicap himself; and the law will presume almost juris et de jure that he did not so intend. And if the contract of employment be not binding for the whole term of such employment, then it cannot be binding upon the employer; there would be lack of "mutuality."

*Beaumont,* 991 F.2d 227, 230 (5th Cir.1993); *Harrington v. Harris,* 118 F.3d 359, 368 (5th Cir.). Substantive due process "requires only that public officials exercise professional judgment in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Walker,* 142 F.3d at 819. "If state action is so arbitrary and capricious as to be irrational, its infringement on a constitutionally protected interest may violate substantive due process rights." *Harrington,* 118 F.3d at 368 (quoting *Neuwirth v. Louisiana State Bd. of Dentistry,* 845 F.2d 553, 558 (5th Cir.1988)).

As set out hereinabove, plaintiff was an "at will" employee, his employment terminable at the will of either the employer or the employee.  Inasmuch as plaintiff has not and seemingly cannot demonstrate the existence of an entitlement to continued employment, the Court does not find that plaintiff had a protected property interest in his job with the City of Eunice and any substantive due process claim fails as a matter of law. Moreover, plaintiff continued to violate policy and procedure in the face of multiple oral and written warnings. It is, therefore, obvious from the facts surrounding the termination of plaintiff, discussed at length herein, that the decision to terminate was not arbitrary, capricious or irrational.

In sum, as an at-will employee, plaintiff has no constitutionally protected property interest in his employment and therefore has no cause of action for violation of substantive or procedural due process rights under the Fourteenth Amendment to the United States Constitution. For the foregoing reasons, defendants' motion for summary judgment will be

36

granted with regards to plaintiff's due process claims, and plaintiff's §1983 claim based on a violation of the Fourteenth Amendment must be dismissed.

###    H.    *Defamation Claim*

Plaintiff has also alleged that defendants are liable to him for "communication of defamatory statements about plaintiff." (See Plaintiff's Complaint, ¶ 19 (e)). Under Louisiana law, in order to prevail in a defamation action, a plaintiff must prove four elements: 1) defamatory words; 3) publication; 4) falsity; 5) malice, either actual or implied; and 6) resulting injury. *Cangelosi v. Schwegmann Brothers*, 390 So.2d 196 (La. 1980).   "Defamatory words" are "those which tend to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating with him." *Sommer v. State Department of Trans. and Dev.*, 758 So.2d 923, 939, (La.App. 4th Cir. 2000).   "Malice" is defined as the lack of reasonable belief in the truth of the alleged defamatory words.

Plaintiff has not made specific assertions regarding the alleged defamation or that he suffered any injury as a result; in short he has not produced any evidence to prove any of the listed elements.  The only allegations comes from plaintiff's deposition, in which he references a newspaper article which defendants' state is attached as Exhibit N to the Motion, but no defamatory words were spoken or written by defendants in this newspaper article.  Also, during his deposition, plaintiff referred to meetings with city officials where he believed that "painted me in a bad light within that area of that room," apparently by

37

tarnishing his "hard work" in giving someone else credit for the work he accomplished. (See Deposition of Plaintiff, pg 130-132, attached as Exhibit M to defendants' Motion). There is no indication that the alleged defamatory statements would harm plaintiff's reputation so as to lower him in the estimation of the community or to deter others from associating with him.  The Court agrees with defendants that any statements were made within a room of city officials, these statements would not amount to defamatory statements, because they would were made in a private setting and could not affect his reputation in the community.

In sum, the record suggests that plaintiff was terminated because he was repeatedly disruptive and refused to follow specific instructions of his supervisors.  Terminating an employee for insubordination is a legitimate reason for termination.  Plaintiff has not produced any evidence that the defendants maliciously used any "defamatory words" to harm plaintiff's reputation during the course of his employment or in carrying out the termination and that injury resulted. Thus, plaintiff's defamation claims fail as a matter of law.

## I.      *Emotional Distress Claims*

Finally, plaintiff's Complaint alleges that "throughout his tenure of employment under the supervision of Mayor Lejeune and Leward Lafleur, intentional and/or negligent emotional distress was inflicted upon him through their statements, actions and inactions." (See Complaint, ¶ 15).

38

To prove intentional infliction of emotional distress under Louisiana law, plaintiff "must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered ... was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La. 1991); *Deus v. Allstate Ins. Co.,* 15 F.3d 506, 514 (5th Cir. 1994).

For a defendant's conduct to satisfy the first prong, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and intolerable in a civilized community." *White,* 585 So.2d at 1209. As to the third prong of the test, the acts must be intentional in the sense that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. *White,* 15 F.3d at 1208.

Plaintiff has not advanced any specific allegations regarding the claimed emotional distress intentionally inflicted upon him by the defendants, nor has he produced any evidence to satisfy any of the elements of the *White* test. As the record does not reflect that the conduct of the defendants towards plaintiff during the tenure of his employment was extreme and outrageous, or in any way intended to inflict severe emotional distress, or made knowing that severe emotional distress would be to result; or that plaintiff in fact

39

suffered severe emotional distress, the Court finds that plaintiff's claim of intentional infliction of emotional distress fails as a matter of law.

Although an independent tort of negligent infliction of emotional distress is not recognized, Louisiana law allows recovery for negligent infliction of emotional distress in cases involving the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Moresi v. Dept. of Wildlife and Fisheries,* 567 So.2d 1081, 1096 (La.1990); *Vallery v. Southern Baptist Hospital,* 630 So.2d 861, 866 (La.App. 4th Cir.1993).  However, recovery is limited to instances of outrageous conduct where there is evidence of severe mental disturbance or there is some personal injury or property damage or the plaintiff was in great fear of his personal safety.  *Moresi v. Dept. of Wildlife & Fisheries,* 567 So.2d 1081, 1095-96 (La.1990).  This case does not involve any of the circumstances or fall within any category recognized under Louisiana law as having an especial likelihood of genuine and serious mental distress.

In conclusion, the record does not reflect that defendants made "extreme and outrageous" statements, actions or inactions to plaintiff or with regards to plaintiff at any time during his employment or on termination of his employment.  Because plaintiff has not produced any evidence to support his claim that defendants intentionally and/or negligently inflicted emotional distress upon him, the claims must be dismissed.

40

**J.      *State Law Retaliation or Whistle-Blower Claim***

Plaintiff's allegation that he was fired in retaliation for informing state organizations and Mayor Lejeune of his criticism of Lafleur and the city administration's general policies and procedures also fall under the provisions of Louisiana's Whistle-blower law, codified at La. R.S. 23:967.   In order to carry his summary judgment burden under La. R.S. 23:967, plaintiff would have to come forward with proof that he in good faith believed that his employer has committed an illegal act, that he notified his employer that he believed the employer was participating in an illegal workplace act, that he disclosed or threatened to disclose the violation, and that his dismissal was as a result of his action.

However, while defendants address this issue in their Motion for Summary Judgment in apparent response to plaintiff's scatter-shot approach reflected in the Complaint, the Court finds that the plaintiff has not properly raised this claim.  Plaintiff's Complaint neither makes reference to this statute, nor sets forth circumstances that give rise to the claim. *Walker v. South Cent. Bell Tel. Co.,* 904 F.2d 275, 277 (5th Cir. 1990); *Beanal v. Freeport McMoRan, Inc.,* 197 F.3d 161, 163 (5th Cir. 1999).  Additionally, as previously found by the Court, there is no evidence to support any claim that plaintiff's employment was terminated for any reason other than violating department policies.  This claim fails as a matter of law, and defendants' Motion for Summary Judgment regarding any claim made pursuant to La. R.S. 23:967 will be granted.

41

## IV.  CONCLUSION

The Court finds that there is no evidence that plaintiff suffered harassment on the basis of race, or a discriminatory and/or retaliatory discharge under Title VII; nor any constitutional deprivation action able under §1981 and/or §1983, and/or the First or Fourteenth Amendments to the United States Constitution.  Nor is there a genuine issue of material fact that plaintiff's termination was based on legitimate, nonretaliatory, nondiscriminatory reasons.  Furthermore, there is no evidence that defendants violated any Louisiana law, including defamation, intentional and/or negligent infliction of emotional distress, or the whistle-blower law.  As plaintiff cannot establish any cause of action alleged against defendants, defendants' motion for summary judgment will be granted.